UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:15-cv-61081-BB

STEPHEN REGAL and GIANNA HILLIS,
individually and on behalf of all other
similarly situated individuals,

      Plaintiffs,

v.

BUTLER & HOSCH, P.A. and
ROBERT H. HOSCH, JR.,

      Defendants.

_____/

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Stephen Regal and Gianna Hillis (collectively "Plaintiffs") individually and on behalf of all others similarly situated, through counsel, bring this action in their individual capacities and on behalf of the class of persons similarly situated as defined below and for their Complaint allege, pursuant to their own knowledge, or where there is no personal knowledge, upon the investigation of counsel and/or upon information and belief, to wit:

## NATURE OF CASE

1.    This action seeks to recover back pay and benefits pursuant to 29 U.S.C. § 2101 *et seq.* (the "WARN Act") and other claims asserted herein based upon the common course of conduct by Defendants Butler & Hosch, P.A. ("B&H") and Robert H. Hosch, Jr. ("Hosch") (collectively "Defendants"), that resulted in the termination of more than seven hundred (700) employees without proper legal notice as part of a mass layoff on May 14, 2015 in Miami, Florida and Defendants' other sites. Defendants' mass layoff deprived hundreds of

1

fired "workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. § 639.1(a).

2.     Defendants failed to provide these terminated employees with sixty (60) days advance written notice required by the WARN Act.

3.     This action also seeks recourse for the several weeks of work performed by Class Members for which they were not paid.

## PARTIES

### Plaintiffs

4.     Plaintiff Stephen Regal is and was at all material times relevant hereto a resident of Broward County, Florida, *sui juris*, and a full-time employee of B&H at the time he was terminated on May 14, 2015.

5.     Plaintiff Giana Hillis is and was at all material times relevant hereto a resident of Broward County, Florida, *sui juris* and a full-time employee of B&H, at the time she was terminated on May 14, 2015.

6.     At all times relevant and material hereto, Plaintiffs and Class Members were either full time employees of B&H, or temporary employees other than part-time employees, and are to be counted in determining that the threshold requirements of the WARN Act are met.

7.      Plaintiffs were B&H employees who, in addition to other substantial employee benefits, earned regular compensation and were damaged by B&H's violations of the WARN Act.

## Defendants

### *Defendant Butler & Hosch, P.A.*

8.      B&H is or was a law firm specializing in the legal needs of the mortgage banking industry. B&H's practice areas include(d) foreclosure, bankruptcy, general litigation, loss mitigation, real estate owed sales, title, and eviction.

9.      There was no public indication that B&H was in financial distress, or that any of its offices were at risk of imminent closure.  To the contrary, B&H's website touted itself as providing "distinguished single-point of contact, cradle-to-grave service in all aspects of real estate and mortgage servicing law" and claims that it received a "Best in State" award for foreclosure and bankruptcy.[1]

10.     At all times material to this litigation, Defendant Hosch actively directed and controlled the daily activities of B&H, to the extent that B&H manifested no separate corporate interest of its own and functioned solely to achieve the purposes of Defendant Hosch.

11.     According to Hosch, B&H and its affiliates were (i) actively prosecuting 50,000 to 60,000 foreclosure files at any given moment, (ii) employed nearly 700 attorneys, paralegals and back office staff, and (iii) had access to 90% of the foreclosure industry in the United States.

---

[1] *See* http://www.butlerandhosch.com/index.php/about-us/ (last visited June 11, 2015).

12.     Hosch, as a shareholder and officer of B&H, exerts direct control over the day-to-day operations of Butler & Hosch and its affiliates.  Plaintiffs seek to impose alter ego liability, and/or to pierce the corporate veil of B&H to hold Hosch solely or jointly and severally liable to Plaintiffs and Class Members for action or inaction by B&H.

13.     B&H and its affiliates are the alter-ego of Defendant Hosch, which affiliates include, but may not be limited to: BH National Default Group, Inc., Butler & Hosch, LLC, Butler & Hosch, PLLC, Cal-Western of Washington, Inc., Cal-Western Reconveyance, LLC, Capstone REO Services, Inc., Cypress Innovations, Inc., Default Consulting Group, Inc., Default Publications, Inc., DefaultLink Post and Publication, LLC, DefaultLink, Inc., iMail, LLC, Palm Direct, Inc., RTS Pacific,Inc. and TitleLink, Inc. (the "B&H Affiliates" or "Affiliates").

14.     Defendants and the B&H Affiliates operated as a single employer of Defendants' employees at all material times, including at the time of the decision to terminate Plaintiffs and Class Members by mass layoff and the execution of these mass layoffs.

15.     Upon information and belief, Hosch maintained direct responsibility for all Defendants' strategic, financial, human resources, and benefits decisions and functions, and exercised control over all of Defendants' business plans and decisions, including the decision to terminate hundreds of employees by mass layoffs.

16.     Upon information and belief, B&H and Hosch were responsible for the failure to provide Plaintiffs with the requisite notice under the WARN Act.

17.     B&H and its Affiliates have several common officers and directors.  Hosch is an officer and/or director of Butler & Hosch, P.A., Default Consulting Group, Inc., BH National Default Group, Inc., and several of the other B&H Affiliates.

18.     B&H and its Affiliates maintain a centralized telephone system, interconnected email system, and shared physical plants, including common entrances and hallways and shared filing systems (both electronic and paper).

19.     B&H and its Affiliates maintain central personnel policies related to the hiring and firing of employees and the payment of wages.  These policies were made and enforced by a central HR Department.  The centralized HR Department and Hosch made the decision to effect the mass layoffs which are the subject of this action. Moreover, Hosch carried out the subject mass layoffs of employees.

20.     The joint or shared HR Department sent mass emails to hundreds of employees, directly from Hosch, advising them that they were part of a mass layoff that was effective immediately.  The emails sent to employees of the various entities referred to "BH" as a singular entity, lumping all of the Affiliates together without distinction as between the Affiliates.

21.     Plaintiffs and many Class Members are unable to accurately distinguish between B&H and the B&H Affiliates.

### *Defendant Robert H. Hosch, Jr.*

22.     At all material times Defendant Hosch was a resident of Dallas, Texas, *sui juris*, and acted individually and on behalf of B&H and all related corporations and/or subsidiaries, including the B&H Affiliates.

5

23.     Defendant Hosch is the founder and sole owner of B&H.  Hosch has established a network of related entities which, in total, provide all of the legal and non-legal services that are ancillary to and support the residential real estate foreclosure market.  Hosch has held numerous positions with B&H and the B&H Affiliates, including President and CEO. Hosch has wielded vast control over B&H and its Affiliates at all material times.  Upon information and belief, Hosch was the President or CEO of most, if not all, of the B&H Affiliates.  Hosch controls B&H and all of the Affiliates through his role as officer, director, and/or shareholder. It has been reported that Hosch was receiving a draw of about $1.2 million per year from a group of companies associated with B&H.

24.     Hosch is individually liable for the actions of B&H at all material times, as hereinafter alleged.

<u>**JURISDICTION AND VENUE**</u>

25.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1334 and 1367, as well as 29 U.S.C. §§ 2102, 2104(a)(5).

26.     Venue over this matter is appropriate in this Court pursuant to 29 U.S.C. § 2104(a)(5) because many of the acts constituting the violation(s) of the WARN Act occurred, and the claims arose, in this District.  Venue is also proper under 28 U.S.C. § 1391(a) and (b). The acts complained of occurred in the State of Florida and, at all relevant times material hereto, B&H maintained an office in this District, conducted business in this District, and a substantial part of the events or omissions giving rise to this action occurred in this judicial District.

<u>FACTS</u>

<u>Defendants Foresaw the Circumstances that Led to their Demise</u>

27.     Starting in 2013, B&H went on an acquisition binge, acquiring a series of law firms and entities that service the default mortgage industry.[2] According to one report, "Butler & Hosch had been quickly expanding its presence across the country over the last few years, buying up default assets in a number of markets."[3]

These acquisitions reportedly included the following:

- In May of 2013, B&H acquired the assets of Cal- Western Reconveyance Corporation, one of the largest trustee companies in the nation and a subsidiary of Prommis Solution.

- In February 2014, B&H acquired Seattle-based Regional Trustee Services Corporation.

- Also in February of 2014, B&H acquired Atlanta-based McCurdy & Candler, LLC Default Practice.

- On or around January 30, 2015. B&H purchased the default assets of Morris Schneider Wittstadt, a law firm based in Atlanta.

28.     This rapid series of acquisitions expanded B&H's business, giving it a national footprint and conducting business in 27 states and the District of Columbia.[4]

---

[2] http://www.dailybusinessreview.com/id=1202726745592/Foreclosure-Firm-Butler-amp-Hosch-Shuts-Down?slreturn=20150510212722 (last visited June 11, 2015).
[3] http://www.housingwire.com/articles/33919-after-nearly-35-years-in-business-mortgage-law-firm-butler-hosch-closes-down> (last visited Jun. 11, 2015).
[4] *Id.*

29.     Upon information and belief, as B&H rapidly grew during this acquisition spree, Defendants understood that their expansive business required increasing amounts of capital to operate.[5]

30.     Upon information and belief, Defendants obtained more than $14 million in credit from lenders, through successive rounds of borrowing, to operate B&H's expanding business during this acquisition spree.[6]

### Butler & Hosch Creates Millions of Dollars in Fictitious Receivables

31.     Beginning on or about January 27, 2015, B&H created more than seven million dollars ($7M) in fictitious receivables through false invoices that were never delivered to clients.

32.     Upon information and belief, Plaintiffs allege that the false client invoices were intended to create the appearance to the firm's lenders and prospective lenders that the firm's accounts receivables were millions of dollars more than the actual amount.

33.     B&H created false client invoices through at least four different schemes.

34.     Upon information and belief, Hosch orchestrated or, at a minimum, had knowledge of each of the four fraudulent billing schemes perpetrated by B&H.

### *False MSW Invoices*

35.     Hosch directed B&H to bill MSW clients a "transfer fee" of $350 per file. The transfer fee is not an approved client charge.

---

[5] *See Id.*
[6] *See Id.*

36.     Beginning on or about January 27, 2015, B&H created a total of 21,690 bogus invoices to MSW clients, charging a transfer fee of $350 to each MSW file.  These bogus MSW invoices had an aggregate receivable amount of more than $7.5 million. These bogus MSW invoices were not uploaded to B&H's LPS system and were not delivered to clients.

### False Korn Law Invoices

37.     Beginning on or about October 10, 2014, B&H created false invoices charging $350 transfer fees to each client file.

38.     These bogus invoices were not uploaded into LPS or delivered to clients.

39.     The fake Korn Law invoices bear the following electronic notation: "RHH -- Do not send to client."

### False RTS Pacific Invoices

40.     Upon information and belief, B&H acquired RTS Pacific in or about July 2014.[7]

41.     On April 21, 2015, nearly a year after the acquisition, B&H created a set of bogus invoices charging $350 transfer fees to a series of RTS Pacific files.  These bogus bills were not uploaded into the LPS system and were not delivered to clients.

### False Hosch Time Entries

42.     On or about March 26, 2015, Hosch created a series of time entries in the B&H billing system which state, "Senior partner year-end review" and bear the additional comment "RHH posting: Do Not Submit Invoice".

---

[7] http://www.housingwire.com/articles/30785-rts-pacific-regional-trustee-services-complete-asset-purchase-agreement (last visited June 11, 2015).

43.     Upon information and belief, Hosch did not perform any year-end review of these case files.

**Mass Termination**

44.     On May 14, 2015, B&H terminated approximately 700 employees, including Plaintiffs, without providing the sixty (60) day notice required under the WARN Act.[8]

45.     The Plaintiffs were full time employees as defined under the WARN Act and suffered an employment loss under the Act.[9]

46.     Those Class Members, who were temporary employees other than part-time employees, are "affected employees" under the WARN Act because the contracts for temporary employment were a part of a long term relationship between Defendants, temporary employees, and their agents.[10]

47.     In the time prescribed by the WARN Act, B&H permanently terminated the affected employees.

48.     Further, more than 50 employment losses occurred during a single 30 day period.[11]

49.     The statutory period under the WARN Act began on March 16, 2015 which is sixty (60) calendar days before the first employment losses began on May 14, 2015.

---

[8] 29 U.S.C. § 2101.
[9] *Id.*
[10] *Id.*
[11] *Id.*

50.     On or about May 14, 2015, Robert Hosch sent an email ("Termination Email") to employees, advising them that B&H is closing, that their positions were terminated, and that they would not be paid for the previous three weeks.

51.     The Termination Email stated, in part, the following:

> It is with great sadness that I report to all of you regarding the difficult financial status of Butler & Hosch and its affiliates ("BH") which has resulted in the filing of the state court Assignments for the Benefit of Creditors ("ABC"). I have voluntarily stepped down as CEO and Senior Partner of BH. The control of the BH companies has been voluntarily placed in the hands of an experienced third-party fiduciary, Mr. Michael Moecker.

52.     How does the filing of these ABC's cases impact you? Though Mr. Moecker has complete access to our assets, he will not have sufficient cash on hand to fund payroll at the end of this week. Without BH employees and attorneys there is no ongoing operation. BH cannot continue to function. To be clear, while I continue to hold out hope that our existing lender and/or strategic partners may provide an infusion of cash today, without it, BH will have no choice but to close its doors immediately.In the Termination Email, Hosch further stated that B&H "grew too fast and could not merge processes from the acquired entities quickly enough to meet our economic forecasts, which resulted in short term cash crunches and our ability to attract new capital in the interim."

53.     Upon information and belief, B&H knew that terminations were anticipated, but failed to provide employees and state and local authorities with advance notice as required under the WARN Act.[12]

---

[12]     B&H reportedly terminated dozens of employees earlier in December 2014.

54.     Terminated employees received no severance and barely an opportunity to gather their personal items before security badges and telephone extensions were deactivated.

55.     Plaintiffs and other terminated employees incurred expenses directly related to performing their duties or following the directions of B&H.  B&H has failed to reimburse Plaintiffs and other terminated employees these expenses.

56.     By failing to disclose impending mass layoffs and provide the statutory notice required by the WARN Act, B&H precluded employees from looking for other work and/or making contingent plans while B&H continued to operate unabated.

57.     As a result of B&H's unlawfully unnoticed layoffs, hundreds of jobs in the South Florida area have been lost to the detriment of the local economy, countless individuals are without wages, and the mortgage foreclosure industry has been devastatingly impacted.

<u>CLASS ACTION ALLEGATIONS</u>

58.     Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(1) and (3) and the WARN Act, 29 U.S.C. § 2104(a)(5).

59.     Plaintiffs bring this action for themselves and on behalf of a class of all similarly situated employees.  Plaintiffs seek to certify a class (the "Class") defined as follows:

> All former employees, excluding part-time employees, of Butler &
> Hosch, P.A. who were terminated from their employment at Butler
> & Hosch without receiving sixty (60) days written notice of a mass
> layoff before the date of their termination.

60.     Excluded from the Class are B&H, the legal representatives, heirs, successors and assigns of any excluded person, and members of the federal judiciary.

61.     Upon information and belief, Plaintiffs estimate that the Class comprises at least seven hundred (700) Class Members, making the Class is so numerous that joinder of all Class Members is impracticable. The members of the Class can be identified and located using information contained in the Defendants' human resources records.

62.     There are common questions of law and/or fact common to the Class that predominate over any questions affecting only individual Class Members.  The questions of law and fact common to the Class arising from Defendants' actions include, but are not limited to the following:

a.   Whether the provisions of the WARN Act apply;

b.   Whether Plaintiffs and Class Members are "affected employees" as defined by the WARN Act;

c.   Whether the employee terminations by B&H on May 14, 2015 constitute a "termination" and/or "mass layoff" under the WARN Act;

d.   Whether B&H failed to provide the notice(s) required by the WARN Act (29 U.S.C. § 2102(b));

e.   Whether Defendants can avail themselves of any of the provisions of the WARN Act which permit lesser periods of notice;

f.   The appropriate formulae to measure damages under the WARN Act (29 U.S.C. § 2104(a)(2)); and

g.   The appropriate definitions and formulae to measure payments to potentially offset damages under the WARN Act (29 U.S.C. § 2104(a)(2)).

63.     Plaintiffs' claims are typical of those of the Class Members. Plaintiffs and the Class Members were subjected to the same kind of unlawful conduct and the claims of Plaintiffs and the Class Members are based on the same legal theories and questions of law and fact pursuant to the WARN Act.

64.     Plaintiffs will fairly and adequately protect the interests of the Class the Plaintiffs represent.  Plaintiffs' interests do not conflict with the interests of the Class, and the Plaintiffs intend on prosecuting this action vigorously.

65.     Plaintiffs have retained experienced counsel qualified in class litigation and counsel are competent to assert the interests of the Class.

66.     The unlawful acts of Defendants, as alleged herein, constitute a course of conduct common to Plaintiffs and each Class Member. Prosecution of separate actions by individual Class Members would create a risk of inconsistent of varying adjudications which would establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of the individual Class Members to protect their interests.

67.     Upon information and belief, Defendants, and each of them, have acted or refused to act on grounds generally applicable to the Class.

68.     A class action here is superior to other available methods for fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated individuals to simultaneously pursue their common claims in a single forum in an efficient manner, without unnecessary duplication of effort and expense that would be required if numerous individual actions were pursued.  However, the affected employees

must opt-in to this litigation so that the right to damages can be determined and quantum of damages can be calculated by the court.

## COUNT I
## ALTER EGO – PIERCING THE CORPORATE VEIL OF BUTLER & HOSCH

69.     Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

70.     As alleged above, at all relevant times herein, Hosch, by his complete exercise of dominion and control, is the alter ego of B&H and its affiliates, which constitute a single employer.  Indeed, as set forth above, there is a high interdependency of operations; there is commonality between management, directors, and officers; there is a consolidation of financial, strategic, legal, and human resources operations; and, at all relevant times, Hosch has used and continued to use B&H and its Affiliates and the assets of these entities for his own purposes.

71.     Moreover, Hosch's control was so extensive and complete that he made the decision to terminate the employees of B&H and B&H Affiliates by mass layoffs, without notice.

72.     Hosch's decision to terminate employees by mass layoffs without notice violated the WARN Act and proximately caused Plaintiffs and members of the Class to suffer damages including, among other damages, the loss of wages during the statutory notice period under the WARN Act.

## COUNT II
## ALTER-EGO – ROBERT H. HOSCH, JR.

73.     Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

74.     As alleged above, at all relevant times herein Hosch, by his complete exercise of dominion and control over B&H, is the alter ego of B&H and its Affiliates. The foregoing entities combine to constitute a single employer, all under the direction and control of Hosch personally.  Indeed, as set forth above, there is a high interdependency of operations; there is commonality between management, directors and officers; there is a consolidation of financial, strategic, legal, and human resources operations; and, at all relevant times, Hosch has used and continued to use B&H and B&H Affiliates and the assets of these entities for his own purposes.

75.     Moreover, Hosch's control was so extensive and complete that he, along with B&H, made the decision to terminate employees of B&H and B&H Affiliates by means of mass layoffs without notice.

76.     Hosch's decision to terminate employees by mass layoffs without notice violated the WARN Act and proximately caused Plaintiffs and members of the Class to suffer damages including, among other damages, the loss of wages during the statutory notice period under the WARN Act.

<u>COUNT III</u>
<u>VIOLATIONS OF THE UNITED STATES WORKER ADJUSTMENT</u>
<u>AND RETRAINING NOTIFICATION ACT ("WARN ACT")</u>

77.     Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

78.     At all times relevant to this lawsuit, Plaintiffs and Class Members have been entitled to the rights, protections, and benefits provided under the WARN Act, 29 U.S.C. § 2101 *et seq.*

79.     Defendants are "employers" as defined by the WARN Act.[13]

80.     Plaintiffs are "affected employees" as defined under the WARN Act. 29 U.S.C. § 2101(a)(5).[14]

81.     The WARN Act regulates the amount of notice an employer must provide to employees who will be terminated via mass layoffs, as well as the back pay and other associated benefits an affected employee is due based on a violation of the required notice period.

82.     Defendants were and are subject to the notice and back pay requirements of the WARN Act because Defendants, individually and collectively, are a business enterprise that employs 100 or more employees, excluding part-time employees, as defined in the Warn Act.  *See* 29 U.S.C. § 2101(1)(A).

83.     The WARN Act required Defendants to provide Plaintiffs and Class Members with 60 days notice prior to the layoffs complained of herein.

84.     This notice was not provided, and Defendants willfully violated the WARN Act by failing to provide the required notice.[15]

85.     Section 2103 of the WARN Act exempts certain employers from the notice requirements of the WARN Act.  *See* 29 U.S.C. § 2103(1)-(2). None of these WARN Act

---

[13] 29 U.S.C. § 2101(a)(1).
[14] 29 U.S.C. § 2101(a)(5).
[15] Some affected employees were constructively discharged by Defendants.

exemptions apply to Defendants' failure to provide required notice to Plaintiffs and Class Members.

86.    Accordingly, Plaintiffs and Class Members have been damaged by Defendants' conduct and are entitled to the notice and back pay required by the WARN Act.  29 U.S.C. § 2101(1)(A).

87.    Defendants have not acted in good faith nor with reasonable grounds to believe their acts and omissions were not a violation of the WARN Act.

88.    Defendants knew of should have known that their conduct was the cause of the actual change in business circumstances at B&H, as evidenced by their public statements, making B&H's closing foreseeable.

89.    Defendant cannot allege in good faith that the terminations were unforeseeable due to business circumstances as the circumstances were a) not unexpected conditions outside the employers control and therefore, b) not sudden or dramatic but in part because of their very own actions which they knew of long before the terminations. As such, business circumstances cannot absolve the Defendants of liability under the WARN Act.

90.    Defendants had ample opportunities to satisfy the WARN Act notice requirements ahead of terminating Plaintiffs and Class Members, but instead willfully chose to remain silent to the detriment of Plaintiffs and the Class.

91.    Plaintiffs have been required to retain counsel in this matter to protect Plaintiffs' rights and have incurred attorneys' fees and costs in this matter.

92.     Plaintiffs are entitled to the amount of back pay and benefits for the period of the violation of the WARN Act by Defendants, in addition to attorney's fees, costs, and any civil penalties this Court deems just and proper.

**COUNT IV**
**BREACH OF EXPRESS CONTRACT**
**(AGAINST BUTLER & HOSCH)**

93.     Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

94.     A valid and enforceable contract existed between Plaintiffs and Class Members and B&H providing Plaintiffs and Class Members with entitlement to earned unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, all accrued paid time off, pension and 401(k) contributions, COBRA benefits, and other benefits.

95.     Those contracts required B&H to pay employees all accrued vacation time, earned commissions, and other benefits at the time of termination of employment.

96.     B&H breached the contract by failing to perform under the terms of its employment contracts with Plaintiffs and Class Members.

97.     As a direct and proximate result of B&H's breach(es), Plaintiffs and the Class have been harmed, entitling them to damages.

**COUNT V**
**BREACH OF IMPLIED CONTRACT**
**(AGAINST BUTLER & HOSCH)**

98.      Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein. This count is pled in the alternative to the breach of express contract claim pursuant to FED. R. CIV. P. 8(d)(2).

99.     The dealings of the parties indicate a meeting of the minds on the terms of an agreement, such that Plaintiffs and Class Members were entitled to compensation for their unused, accrued vacation time and other accrued benefits, such as earned commissions.

100.     In the event no express contracts existed between the parties, implied contracts existed by virtue of B&H's conduct and course of conduct.

101.     B&H breached its contracts by failing to pay the aforementioned compensation and deliver benefits.

102.     As a direct and proximate result of B&H's breach(es), Plaintiffs and the Class have been harmed, entitling them to damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants and an Order providing for:

a. Certification of the Class pursuant to FED. R. CIV. P. 23; certifying Plaintiffs as representatives of the Class and designating their counsel of record as counsel for the Class;

b. Finding that Defendants have violated the WARN Act and therefore holding Defendants liable to Plaintiffs and the Class in an amount to be determined;

c. Compensatory damages in an amount equal to at least the amounts provided by the WARN Act, 29 U.S.C. § 2104(a);

d. A judgment in favor of Plaintiffs and the other similarly situated former employees equal to the sum of: their unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, all accrued paid time off, pension and 401(k) contributions, COBRA benefits, and other benefits, for 60 days, that would have been covered

and paid under the then-applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C.A. § 2104(a)(1)(A), all unreimbursed expenses advanced by Plaintiffs and Class Members, including any civil penalties;

 e. Reasonable attorney fees and costs;

 f. Pre-judgment interest as may be determined by statute and rule;

 g. Leave to amend this Complaint to add state law claims should it prove necessary; and

 h. Such other and further relief as the Court may deem necessary or appropriate.

<u>**DEMAND FOR JURY TRIAL**</u>

 Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a trial by jury of all issues so triable.

Dated:  June 11, 2015     Respectfully submitted,

          */s/ Seth M. Lehrman*
          Gary M. Farmer (Fla. Bar No. 914444)
          E-mail: gary@pathtojustice.com
          Steven R. Jaffe (Fla. Bar No. 390770)
          E-mail: steve@pathtojustice.com
          Mark S. Fistos (Fla. Bar No. 909191)
          E-mail: mark@pathtojustice.com
          Seth M. Lehrman (Fla. Bar No. 132896)
          E-mail: seth@pathtojustice.com
          FARMER, JAFFE, WEISSING,
          EDWARDS, FISTOS & LEHRMAN, P.L.
          425 N. Andrews Ave., Suite 2
          Fort Lauderdale, Florida 33301
          Telephone:  (954) 524-2820
          Facsimile:  (954) 524-2822

          *Attorneys for Plaintiffs*