UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-CIV-61081-BLOOM

STEPHEN REGAL, GIANNA HILLIS,
and MATTHEW WILLIAMS,

    Plaintiffs,

v.

BUTLER & HOSCH, P.A., and
ROBERT H. HOSCH, JR.,

    Defendants.
_____/

## ORDER

THIS CAUSE is before the Court upon Defendant Butler & Hosch, P.A.'s Motion to Dismiss First Amended Class Action Complaint, ECF No. [22], and Defendant Robert H Hosch, Jr.'s Motion to Dismiss First Amended Class Action Complaint, ECF No. [21] (the "Motions"). The Court has reviewed the Motions, all supporting and opposing filings, the record, and the relevant law. Being fully advised, it is hereby adjudged that the Motions are granted.

## I. INTRODUCTION AND FACTS

Defendant Butler & Hosch, P.A. ("B&H") was a law firm specializing in the mortgage banking industry, which touted itself as providing "distinguished single-point of contact, cradle-to-grave service in all aspects of real estate and mortgage servicing law." *See* First Amended Class Action Complaint, ECF No. [7] (hereinafter, "Complaint") at ¶¶ 8-9. During the pertinent time period, B&H and its affiliates employed nearly 700 attorneys, paralegals, and office staff who, at any given time, were actively prosecuting 50,000 to 60,000 foreclosure files. *Id.* at ¶ 11. Defendant Robert H Hosch, Jr. ("Hosch") is the founder and sole owner of B&H. *Id.* at ¶ 23.

Hosch's authority was extensive, maintaining direct control over day-to-day operations, as well as over B&H's strategic, financial, human resources, benefits decisions and functions, and business plans. *Id.* at ¶¶ 12, 15.

In 2013, B&H went on an "acquisition binge," rapidly expanding its national presence by acquiring a series of law firms and related entities involved in the default mortgage industry. *Id.* at ¶ 27. In pursuit of the expansion, B&H obtained millions of dollars in credit from lenders. *See id.* at ¶¶ 29-30. Later, in January 2015, B&H created $7 million in fictitious receivables through false invoices in order to deceive its creditors into believing that the firm's accounts receivables were substantially greater. *Id.* at ¶ 31. B&H continued its attempts to create the false appearance of virility by generating more and more false invoices. *See id.* at ¶¶ 33-43. According to the Complaint, B&H's rate of growth was simply unsustainable. *Id.* at ¶ 52. Thus, two years after commencing the "binge," on May 14, 2015, B&H terminated approximately 700 employees, including Plaintiffs, Stephen Regal, Gianna Hillis, and Matthew Williams (collectively "Plaintiffs"), without providing the sixty (60) day notice required under the Worker Adjustment and Retraining Notification Act (the "WARN Act" or "Act"), 29 U.S.C. § 2101 *et seq.* and closed its doors (the "Mass Termination"). *Id.* at ¶ 44.

On the date of the Mass Termination, Hosch sent an email to his soon-to-be former employees advising them of B&H's closing, their termination, and the fact that they would not be paid for the previous three weeks. *Id.* at ¶ 50. Not only were the terminated employees deprived of the value of their labor for the previous weeks, they also received no severance and, due to the abrupt nature of the Mass Termination, were afforded no opportunity to seek other employment. *Id.* at ¶¶ 54-56. Notwithstanding the fact that B&H had anticipated the terminations, it nevertheless failed to provide its employees, as well as state and local officials,

with advance notice as required under the WARN Act. *Id.* at ¶ 53. As a direct result, Plaintiffs commenced this action on behalf of "[a]ll former employees, excluding part-time employees, of [B&H] who were terminated from their employment at [B&H] without receiving sixty (60) days written notice of a mass layoff before the date of their termination." *Id.* at ¶ 59. More specifically, Plaintiffs assert five (5) counts, one of which, as expected, alleges violations of the WARN Act (Count III). *Id.* at ¶¶ 77-92. Plaintiffs also seek to pierce B&H's corporate veil in order to impose liability upon Hosch in his individual capacity for B&H's WARN Act violations (Counts I and II). *Id.* at ¶¶ 69-76. Additionally, Plaintiffs bring causes of action for breach of express and implied contracts against B&H (Counts IV and V, respectively), claiming that B&H breached the purported contract "by failing to perform under the terms of its employment contracts with Plaintiffs." *Id.* at ¶¶ 93-102. B&H and Hosch (collectively, "Defendants") now move for dismissal under Fed. R. Civ. P. 12(b)(6).

## II. LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). When reviewing such a motion, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the

3

plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true.").

A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

### III. DISCUSSION

Defendants challenge the adequacy of all five Counts of the Complaint. The Court addresses each in turn. While there is no individual liability under the WARN Act (Counts I, II, and III), Plaintiffs' remaining claims require only minor amendment and are otherwise sufficient.

**A.    Individual and Alter-Ego Liability under the WARN Act (Counts I, II, and III)**

Counts I and II of the Complaint are identical in nature, seeking to apply B&H's WARN Act violation to its majority shareholder, Hosch. A corporation and its owners are separate legal entities existing independently of each other. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." (quotation omitted)); *see also*

*Burnet v. Clark*, 287 U.S. 410, 415 (1932) ("A corporation and its stockholders are generally to be treated as separate entities").  Notwithstanding this general principle, a shareholder may be held liable for the corporation's conduct under certain circumstances.  *See Bestfoods* at 62.  When "the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud," the corporate veil may be pierced to impose liability on the shareholder.  *Id.* (citation omitted).

As an initial matter, while "Florida courts permit alter ego allegations to be pled as a distinct cause of action," federal courts are generally averse to the practice.  *See Oginsky v. Paragon Properties of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1373 (S.D. Fla. 2011) (citing *Acadia Partners, L.P. v. Tompkins*, 759 So. 2d 732, 740 (Fla. 5th DCA 2000); *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, Case No. 09–CV–61436, 2010 WL 1531489, at *9 (S.D. Fla. April 16, 2010)).  In federal practice, "[a]lter ego is not a separate cause of action for which relief can be granted; rather, . . . alter ego serves as a theory to impose liability on an individual for the acts of a corporate entity." *Tara Productions* at *9 (citing *Acadia Partners* at 740).  While Plaintiffs may be able to utilize the doctrine to assert liability against Hosch, it may not be plead as a distinct cause of action.  *See id.* (dismissing alter ego count with prejudice but allowing plaintiff to plead allegations regarding alter ego liability in the body of the complaint and connect the same to other claims); *Raimbeault v. Accurate Mach. & Tool, LLC*, No. 14-CIV-20136, 2014 WL 5795187, at *9 (S.D. Fla. Oct. 2, 2014) (same); *see also Peacock v. Thomas*, 516 U.S. 349, 354 (1996) ("Piercing the corporate veil is not itself an independent [] cause of action, but rather is a means of imposing liability on an underlying cause of action." (internal quotation and citation omitted)).  Consequently, Counts I and II must be dismissed.  The question then becomes whether the allegations themselves may remain.

Defendants challenge not only the merits of Plaintiffs' alter-ego allegations, but also whether alter-ego liability can be imposed for violations of the WARN Act. Because an individual cannot be liable under the Act, these allegations, nevertheless, fail.

The WARN Act prohibits "employers" from ordering a "mass layoff until the end of a 60-day period after the employer serves written notice of such an order . . . ." 29 U.S.C. § 2102(a). The term "employer" is defined by the Act as "any *business enterprise* that employs . . . 100 or more employees, excluding part-time employees" or "100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)." 29 U.S.C. § 2102(a)(1) (emphasis supplied). According to Hosch, because an individual does not qualify as a "business enterprise," an individual may not be held liable for violations of the Act.

Several courts throughout the United States have agreed with Hosch's apprehension of the law. After combing through applicable regulations and the legislative history of the WARN Act, the Eastern District of New York concluded "that Congress defined 'employer' as a 'business enterprise' and intended a 'business enterprise' to mean a corporate entity—i.e. corporation, limited partnership, or partnership—not an individual." *Cruz v. Robert Abbey, Inc.*, 778 F. Supp. 605, 609 (E.D.N.Y. 1991) (citing 20 C.F.R. § 639.3(a) (noting that "employer" includes non-profit organizations as well as "public and quasi-public entities which engage in business") and H.R. CONF. REP. 100-576, 1046, 1988 U.S.C.C.A.N. 1547, 2079 (stating that "a 'business enterprise' be deemed synonymous with the terms company, firm or business, and that it consist of one or more sites of employment under common ownership or control")). The District of Maryland has since concurred, dismissing individually-named executives and managers notwithstanding the fact that those individuals were responsible for the corporate entity's abrupt closure. *Smith v. ABC Training Ctr. of Maryland, Inc.*, No. CIV. JFM-13-306,

2013 WL 3984630, at *5 (D. Md. Aug. 1, 2013) (citing *Lewis v. Textron Auto. Co.*, 935 F. Supp. 68, 71 (D.N.H. 1996) ("The Individual Defendants are not a business enterprise and therefore cannot be liable for [the corporation's] alleged failure to comply with the WARN Act, even if those individuals were executives and managers responsible for [the corporation's] abrupt closure."). A number of other courts have found that individual liability may not be imposed under the Act. *See Wallace v. Detroit Coke Corp.*, 818 F. Supp. 192, 194 (E.D. Mich. 1993) (dismissing individual defendant because "[b]ased on the Act's language and legislative history and on case precedent, . . . [the individual defendant] is not an employer under the Act"); *Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.*, 778 F. Supp. 297, 315-17 (E.D. La. 1991) *aff'd in part, rev'd in part sub nom. Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275 (5th Cir. 1994) (granting summary judgment on claims against officers and directors because "the definition of employer in the WARN Act was not intended to include officers and directors of a corporate employer"); *Hollowell v. Orleans Reg'l Hosp.*, No. CIV.A. 95-4029, 1998 WL 283298, at *9 (E.D. La. May 29, 1998) *aff'd sub nom. Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379 (5th Cir. 2000) ("The statutory language of the WARN Act, its legislative history, and the caselaw interpreting both, all indicate that an individual may not be held directly liable for WARN Act violations.").

This Court agrees with the cited cases; the plain language of the WARN Act, associated regulations, and legislative history indicate that an individual does not qualify as a "business enterprise" as the term is used in the Act. The relevant Department of Labor regulation references other large organizations such as non-profits, and public entities, and the legislative history indicates that the drafters intended the term "business enterprise" to be "synonymous with the terms company, firm or business. *See* 20 C.F.R. § 639.3(a); H.R. CONF. REP. 100-576,

7

1046, 1988 U.S.C.C.A.N. 1547, 2079.  There is simply no reference to individual liability in the statute, legislative history, or pertinent regulations. Indeed, Plaintiffs submit no authority in support of their contention that the term "business enterprise" includes individual actors.  Rather Plaintiffs request that the Court be guided by the definition of the term as found in Black's Law Dictionary.  Although Black's is certainly a persuasive tool in the arsenal used to interpret the plain meaning of words, Plaintiffs' definition is outdated.[1]  The current definition lends additional support to the conclusion that the term "business enterprise" does not include individuals.  *See Business Enterprise*, Black's Law Dictionary (10th ed. 2014) (defining the term as "[a] for-profit company, business, or organization that provides financial, commercial, or industrial goods and services").  Because the WARN Act only applies to business enterprises, a term which does not include individuals, the imposition of alter-ego liability on Hosch, an individual, is inappropriate.[2]

In the alternative, Plaintiffs assert that B&H and Hosch should be considered a "single employer" for liability purposes.  *See* Compl. at ¶ 14.  Generally, "independent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as a part of the parent or contracting company depending upon the degree of their independence from the parent."  20 C.F.R. § 639.3(a)(2).  Thus, where two affiliated entities are

---

[1] Plaintiffs' utilize the definition found in Black's Law Dictionary (6th ed. 1990).  Four additions have since been published.  Use of the more contemporary definition is apropos.

[2] While the Eleventh Circuit has seemingly not had occasion to offer its opinion on this issue, the Fifth Circuit has held that alter-ego liability may apply in the context of the WARN Act.  *See Plasticsource Workers Comm. v. Coburn*, 283 F. App'x 181, 186 (5th Cir. 2008) ("[T]his Court has previously found that natural persons may be held indirectly liable for statutory WARN Act damages under an alter-ego theory." (citing *Hollowell v. Orleans Reg'l Hosp.*, 217 F.3d 379, 385 (5th Cir. 2000)).  This Court respectfully declines to find the same.  Concluding otherwise would allow plaintiffs to circumvent the proscription on individual liability by pleading the violations indirectly under a theory of alter-ego liability.

essentially one in the same, in other words, a "single employer," they may be jointly and severally liable for WARN Act violations. *See Pearson v. Component Tech. Corp.*, 247 F.3d 471, 483 (3d Cir. 2001). Plaintiffs fail to indicate how Hosch may be considered half of a single employer where Hosch himself is not an "employer" as the term is used in the Act. Because Hosch may not be considered a "business enterprise" under the Act, he is not an "employer." Thus, single employer liability is equally improper. Accordingly, the allegations of Counts I and II warrant dismissal and the Court need not address the merits of Plaintiffs' piercing the veil assertions. Moreover, to the extent Count III is brought against Hosch, individually, this claim also fails for the reasons stated herein.

### B. The Breach of Contract Claims (Counts IV and V)

B&H challenges Counts IV and V on the basis that Plaintiffs have failed to specify the express contractual provisions breached and otherwise fail to allege the existence of an implied contract.[3] Plaintiffs' allegations in this respect are generally sufficient, save for one aspect as set forth below.

In order to state a claim for breach of contract under Florida law, a plaintiff must plead that there was (1) a valid contract, (2) a material breach, and (3) damages. *Int'l Star Registry of Illinois v. Omnipoint Mktg.*, LLC, 510 F. Supp. 2d 1015, 1022 (S.D. Fla. 2007) (citing *Abbott Lab., Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000)). This Court has dismissed claims for breach of contract where it is unclear what provision or obligation under the contract has been violated. *See George v. Wells Fargo Bank, N.A.*, 2014 WL 61487 (S.D. Fla.

---

[3] Defendant Hosch also seeks dismissal of Counts IV and V asserting that there is no plausible basis for relief against Hosch under a theory of breach of either an express or implied contract. A cursory review of Counts IV and V indicate that such claims are brought exclusively against B&H, not Hosch. *See* Compl. at 19 (stating that the counts are "against Butler & Hosch"). Therefore, the Court declines to address this matter further.

9

Jan. 8, 2014) ("The Amended Complaint does not identify which provision of the [contract] has been breached and therefore runs afoul of *Twombly*."); *Gentry v. Harborage Cottages-Stuart, LLLP*, 2008 WL 1803637, at *4 (S.D. Fla. Apr. 21, 2008) ("Where the facts pleaded are insufficient to determine which of the provisions may have been breached, the claim cannot survive a motion to dismiss."); *see also Whitney Nat. Bank v. SDC Communities, Inc.*, 2010 WL 1270264 (M.D. Fla. Apr. 1, 2010) (dismissing breach of contract claim where plaintiff failed "to allege the specific provision of the contract allegedly breached"). Thus, B&H asserts that Plaintiffs' failure to specify the contractual provisions breached renders the claim defective.

The Court disagrees in part. While the Complaint in this regard is not the most precise pleading, it does indicate that B&H breached by failing to pay employees "earned unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, all accrued paid time off, pension and 401(k) contributions, COBRA benefits, and other benefits." *See* Compl. at ¶ 94. As can be discerned from the preceding sentence, Plaintiffs also include vague, "catchall" methods of breach such as "other benefits." At a minimum, Rule 8 requires Plaintiffs to indicate the precise provisions allegedly breached. Accordingly, ambiguous catchall allegations are insufficient. *See Gentry v. Harborage Cottages-Stuart, LLLP*, No. 08-14020-CIV, 2008 WL 1803637, at *3 (S.D. Fla. Apr. 21, 2008) (dismissing breach of contract claim where "allegations fail[ed] to provide sufficient reference to a specific term of the [contract] that was breached"). If Plaintiffs wish to allege breaches other than those specifically elucidated, Plaintiffs may do so on amendment.[4] *See* Fed. R. Civ. P. 15(a)(2) (requiring district courts to grant leave to amend "freely . . . when justice so requires").

---

[4] To the extent B&H complains that a copy of the contract has not been included with the Complaint, this dispute is irrelevant. "[A] Plaintiff is not required to attach a contract to its complaint in order to state a breach of contract claim." *Curi v. Pershing LLC*, No. 12-20566-

Moving to Plaintiffs' claim for breach of an implied contract, the Court finds this claim to be generally adequate as well. "A contract implied in fact occurs when the assent of the parties can be inferred from the course of dealing or course of performance of the parties." *Solnes v. Wallis & Wallis, P.A.*, No. 13-61225-CIV, 2013 WL 3771341, at *7 (S.D. Fla. July 18, 2013) (citing *Rabon v. Inn of Lake City, Inc.*, 693 So. 2d 1126, 1131 (Fla. 1st DCA 1997)) (further citations omitted). An implied contract "requires the same elements as an express contract— . . . a mutual intent to contract—and differs only in the parties' method of expressing mutual consent." *Id.* (quoting *Jenks v. Bynum Trans., Inc.*, 104 So. 3d 1217, 1224 (Fla. 1st DCA 2012)). "[W]here an implied-in-fact contract exists, no offer and acceptance need be demonstrated, as it is found based on the parties' course of conduct." *Id.* (citing Restatement (Second) of Contracts § 3.e. (1981)). Plaintiffs clearly allege that a contract existed between B&H and the Plaintiffs by virtue of the parties' course of conduct. Yet again, vague allegations concerning the express obligations breached, such as "other accrued benefits," will not suffice. *See Gentry*, 2008 WL 1803637, at *3. Plaintiffs must provide sufficient notice as to the provisions B&H has violated.

C.     **General Challenges to the Complaint: Shotgun Pleading and Ambiguity**

Both Defendants contend that the Complaint inappropriately incorporates all prior allegations, thereby amounting to a "shotgun pleading." In general, a shotgun pleading "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). This Court and the Eleventh Circuit has warned litigants that shotgun pleadings tend to "impede the orderly, efficient and economic disposition of disputes as

---

CIV, 2012 WL 3042998, at *3 (S.D. Fla. July 25, 2012) (citing *Gulf Coast Produce, Inc. v. Am. Growers, Inc.*, 2008 WL 660100, at *2 (S.D. Fla. Mar.7, 2008)).

well as the court's overall ability to administer justice." *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1336 (S.D. Fla. 2010) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1128–31 (11th Cir. 2001)); *see also Strategic Income*, 305 F.3d at 1296 n.10 (setting forth the various ways in which shotgun pleadings harm the courts and other litigants). By definition, a shotgun pleading does not comport with Rule 8's requirement of a short and plain statement of the claim. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

Rather than re-alleging the "general allegations" of the Complaint, each count re-alleges the entirety of the preceding paragraphs. *See e.g.*, Compl. at ¶ 98 ("Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein."). This lack of exactitude makes it appear as if the Complaint fits the shotgun-pleading mold. *See Strategic Income* at 1295. However, the Complaint is a far cry from the rambling, incoherent allegations generally indicative of a shotgun pleading. Accordingly, Plaintiffs shall be permitted to remedy this scrivener's error.

Last, B&H asserts that Counts III, IV, and V should be dismissed for improperly commingling Defendants in a manner which makes it "impossible to determine with certainty which act and omissions are alleged to be the responsibility of B&H or which are alleged to be the responsibility of Mr. Hosch." Counts IV and V merit little discussion; these Counts are alleged solely against B&H, as indicated in the title of each Count. Count III, however, appears to be brought against both Defendants. As previously discussed, because individual liability may not be imposed under the WARN Act, Count III is dismissed as to Defendant Hosch.

## IV. CONCLUSION

For the foregoing reasons it is hereby **ORDERED AND ADJUDGED** that Defendant Butler & Hosch, P.A.'s Motion to Dismiss First Amended Class Action Complaint, **ECF No.**

**[22]**, and Defendant Robert H Hosch, Jr.'s Motion to Dismiss First Amended Class Action Complaint, **ECF No. [21]**, are **GRANTED**.  Plaintiffs shall be permitted to amend in accordance with this Order **on or before October 23, 2015**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 8th day of October, 2015.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record